**MONSANTO COMPANY, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

**Civ. A. No. 78–W–5024–NE.**

United States District Court, N. D. Alabama.

Aug. 7, 1978.

Warren B. Lightfoot, Robert W. Bradford, Jr., Robert K. Spotswood, Birmingham, Ala., for plaintiff; Bradley, Arant, Rose & White, Birmingham, Ala., M. Mason Pattillo, III, Frank D. Zielinski, St. Louis, Mo., of counsel.

Herbert S. Sanger, Jr., Gen. Counsel, Charles A. Wagner, III, Associate Gen. Counsel, Thomas A. Pedersen, Melvin L. Harper, Knoxville, Tenn., for defendant.

WYATT, District Judge: *

This is a motion by defendant ("TVA") to dismiss the action on the ground that plaintiff ("Monsanto") has failed to state in its complaint a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Counsel for the parties were heard in oral argument at Huntsville on April 27, 1978.

No affidavits were submitted for either side but, with its reply brief, TVA sub-

* Of the Southern District of New York, sitting by designation.

mitted a copy of an internal memo, dated February 19, 1970, of counsel for Monsanto. This memo was written five years before the date of the relevant contract between TVA and Monsanto, and apparently was in reference to some contract other than that relevant to this action. It was agreed at oral argument that the Court should take this memo into consideration. The present motion will accordingly be treated as one for summary judgment. Fed.R.Civ.P. 12(b), 56. The motion must be granted.

### 1.

The action was commenced in the Circuit Court for Morgan County, Alabama. The Complaint stated one claim against TVA for alleged negligence causing a total interruption on January 6, 1977, in the supply of electric power by TVA to Monsanto's plant at Decatur. The complaint averred that Monsanto's Decatur plant operated continuously, 24 hours a day; that it had a high production; that the supply of power by TVA was under a contract dated February 28, 1975, a copy of which was made part of the complaint; that the January 6, 1977, interruption of power was caused by the negligence of TVA; and that the interruption of power caused damages in excess of $300,000 to equipment of Monsanto at its Decatur plant and in loss of materials and profits. While the contract for power was part of the complaint, that pleading made it clear that Monsanto was not suing for breach of contract but for negligence under Alabama law.

TVA removed the action to this Court as one of which this Court had original jurisdiction (28 U.S.C. § 1441) because it arose under federal law (28 U.S.C. § 1331(a)) and also arose under an Act of Congress regulating commerce (28 U.S.C. § 1337).

Monsanto moved to remand. This motion was denied by order with opinion dated March 27, 1978.

This present motion to dismiss then followed.

### 2.

TVA relies on a provision of the power contract between the parties. This provision is in a document titled "Terms and Conditions", expressly made a part of the power contract. It is in a section headed "Interference with Availability or Use of Power." This specifies the agreed consequences (a) if the supply of power by TVA is interrupted or curtailed ("availability" of power) or (b) if Monsanto is unable to use the power available from TVA ("use" of power). The consequences specified in (a) govern the situation at bar.

The applicable wording is as follows:

"It is recognized by the parties that the availability of power to Company [Monsanto] may be interrupted or curtailed from time to time during the term of this contract because of force majeure or otherwise. Company shall be solely responsible for providing and maintaining such equipment in its plant and such emergency operating procedures as may be required to safeguard persons on its property, its property, and its operations from the effects of such interruptions or curtailments. Company assumes all risk of loss, injury or damage to Company resulting from such interruptions or curtailments. If any such interruption or curtailment lasts longer than 30 consecutive minutes, TVA shall cancel or proportionately reduce, as the case may be, the charges for services for the period of such interruption or curtailment."

The title "Terms and Conditions" under which this wording appears in the contract was doubtless intended to track language from the Act authorizing the creation of TVA, the "Tennessee Valley Authority Act of 1933" (16 U.S.C. §§ 831 and following; "the TVA Act"). This language is specifically that authorizing TVA "to include in any contract for the sale of power such *terms and conditions* . . . as in its judgment may be necessary or desirable for carrying out the purposes of this chapter . . . ." (16 U.S.C. § 831i; emphasis supplied).

The quoted provision from the power contract seems clearly to say that if the power from TVA is interrupted, then Monsanto must itself bear all damage therefrom, whether the interruption be caused by force majeure or "otherwise", a term broad enough to include TVA's negligence as charged in this suit.

The only relief for Monsanto in the contract is that, if the interruption lasts longer than thirty minutes, TVA must "cancel or proportionately reduce" its charges for service during the period of power failure. The length of the power interruption on January 6, 1977, does not appear in the papers and it would not affect this action if it did. It seems, from what was said at oral argument, that the power failure was for less than thirty minutes.

Monsanto, according to the contract, agreed that it assumed all risk of damage from any power interruption, whatever the cause thereof. Therefore, Monsanto may not recover on its claim in this action.

### 3.

Monsanto relies on a provision in the power contract in a separate section titled "Facilities Rental."

This section deals with the use by Monsanto of equipment ("facilities") owned by TVA for the purpose of reducing the voltage of the power available from TVA (46 kv) to the voltage desired by Monsanto (13.2 kv). It appears from the contract that the delivery point of the TVA power to Monsanto is the Chemstrand Substation, owned by Monsanto and located on the plant property of Monsanto; that TVA power available for delivery to Monsanto at the Chemstrand Substation had a voltage of 46 kv; that Monsanto desired power having 13.2 kv voltage; that at Monsanto's request and for Monsanto's benefit TVA installed, operated and maintained in the Chemstrand Substation, equipment owned by TVA; that this equipment reduced the voltage from the available 46 kv to the 13.2 kv desired by Monsanto; that the cost of this equipment to TVA was, at the date of the contract, $716,301; and that Monsanto agreed to pay to TVA a monthly "rental charge" for this equipment based on its cost.

The section first specifies the amount of the rental charge.

The section next contains a release of TVA by Monsanto from all claims by Monsanto arising out of the "operation" or "failure to TVA's facilities, except for . . . property damage, or loss of . . . property . . . caused by the sole negligence of . . . TVA . . . ." It is this quoted provision on which Monsanto here relies, asserting that it constitutes a recognition that TVA is liable for negligence in the operation or failure of *any* of its facilities. This assertion cannot be accepted. When the contract is read as a whole, it is clear that the quoted provision applies *only* to damage caused by TVA in the operation or failure of its voltage reducing equipment in the Chemstrand Substation; "TVA's facilities" can only refer to those facilities of TVA in the Chemstrand Substation. The negligence claimed by Monsanto in the case at bar was not in any way connected with the TVA equipment in the Chemstrand Substation. The complaint makes it plain (para. 6) that the negligence sued for here is claimed to have been in respect of the Trinity Substation, a wholly different part of TVA's activities and equipment.

The situation at bar is governed by provision (4) of the "Terms and Conditions" made part of the contract; it is a provision specifically designed for such a situation as that at bar—"Interference with Availability . . . of Power". Monsanto thereby agreed to accept *all* risk of damage from power interruptions. It flies in the face of reason to take an isolated expression in a separate section of the contract dealing with a separate subject and attempt to apply such expression to the situation here at bar. The theory of Monsanto is without merit.

Very little, if any, of the background of the contract is given by either of the parties. In the face of the plain wording of the contract this makes no difference in the

**346**

result. TVA must prevail as a matter of law.

**4.**

Monsanto also argues (Brief, p. 7) that "federal law prohibits the exculpation of TVA's negligence under the contract in question." There may well be some occasions in public utility law or elsewhere in which a dominant party is not allowed— from monopoly position or otherwise—to insist on a contract provision exculpating negligence. These occasions need not long detain us because they are utterly unlike that at bar. Congress specifically authorized TVA to sell its power on such "terms and conditions . . . as in *its* judgment may be necessary or desirable . . . ." (16 U.S.C. § 831i; emphasis supplied.) As Judge Lynne pointed out not long ago, Congress—and not the Courts—has the constitutional power to say how federal property may be disposed of. *Mobil Oil Corp. v. Tennessee Valley Authority*, 387 F.Supp. 498, 507 fn. 22 (N.D.Ala.1974). The contract made by TVA with Monsanto was within the constitutional authority vested by Congress in TVA.

The arguments for Monsanto have been ably presented in writing and at oral argument. They have been carefully considered. It is concluded that there is no genuine issue of material fact and that TVA is entitled to judgment as a matter of law. The Clerk is directed to enter judgment on the merits in favor of defendant.

SO ORDERED.